IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
Pensacola Division

OLUWASHINA KAZEEM AHMED-AL-KHALIFA,
a/k/a OLUWASHINA AHMED,
a/k/a MARK AYILLA,
　　　Plaintiff,

vs.                                                     Case No.: 3:13cv289/WS/EMT

THE SALVATION ARMY, NIGERIA
TERRITORY SOCIAL SERVICES SECTION,
　　　Defendant.

_____/

## MOTION OF *AMICUS CURIAE* EARTHRIGHTS INTERNATIONAL FOR LEAVE TO FILE BRIEF OF *AMICUS CURIAE* IN SUPPORT OF NEITHER PARTY; ACCOMPANYING MEMORANDUM OF POINTS AND AUTHORITIES

*Amicus curiae* EarthRights International (ERI) hereby respectfully moves the

Court to accept the attached Memorandum of Law of *amicus curiae* in Support of Neither

Party, in order to address the impact of *Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct.

1659 (2013) on Plaintiff's complaint in Case No. 3:13cv289/WS/EMT.



## CITATION OF AUTHORITIES

### FEDERAL CASES

*Bayshore Ford Trucks Sales, Inc. v. Ford Motor Co. (In re Ford Motor Co.)*,
  471 F.3d 1233 (11th Cir. 2006) ....................................................................................... 5

*Bowoto v. ChevronTexaco Corp.*,
  No. 99-CV-2506 (N.D. Cal.) ........................................................................................... 4

*Conservancy of Sw. Fla. v. United States Fish & Wildlife Serv.*,
  2010 U.S. Dist. LEXIS 94003 (M.D. Fla. Sept. 9, 2010) ................................................ 6

*Doe v. Unocal Corp.*,
  No. 00-56603 (9th Cir.) .................................................................................................... 4

*John Doe I v. Chiquita Brands Int'l, Inc.*,
  No. 08-80421-cv-MARRA/JOHNSON (S.D. Fla.), No. 12-14898 (11th Cir.).............. 4

*Kiobel v. Royal Dutch Petroleum Co.*,
  133 S. Ct. 1659 (2013)............................................................................................. passim

*Steel Co. v. Citizens for Better Environment*,
  523 U.S. 83 (1998)......................................................................................................... 1-2

*Sosa v. Alvarez-Machain*,
  542 U.S. 692 (2004)................................................................................................. passim

*Morrison v. Nat'l Australia Bank Ltd.*,
  130 S. Ct. 2869 (2010).................................................................................................... 2-3

*News & Sun-Sentinel Co. v. Cox*,
  700 F. Supp. 30 (S.D. Fla. 1988) ..................................................................................... 6

*Resort Timeshare Resales, Inc. v. Stuart*,
  764 F. Supp. 1495 (S.D. Fla. 1991) ................................................................................. 5

*Wiwa v. Royal Dutch Petroleum Corp.*,
  No. 96 Civ. 8386 (S.D.N.Y.) ........................................................................................... 4

### FEDERAL STATUTES

28 U.S.C. § 1350............................................................................................................... 5

Fed. R. Civ. Proc. 12(b)(6) ........................................................................................................... 5

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR LEAVE TO FILE BRIEF AMICUS CURIAE

### I.     Introduction and Interest of *Amicus Curiae*

*Amicus* seeks to submit the attached *amicus* brief to correct the jurisdictional error committed by the honorable Magistrate Judge Elizabeth M. Timothy in the April 29, 2013 Report and Recommendation (R&R) issued in this case.

Specifically, *amicus* demonstrates that the April 29, 2013 R&R erred in concluding that the application of *Kiobel* is a jurisdictional question, and therefore erred in reaching that question without first establishing that the court had subject matter jurisdiction over this action.

The Magistrate Judge applied *Kiobel* to Plaintiff's claims and recommended that Plaintiff's complaint be dismissed with prejudice for lack of subject matter jurisdiction. The Magistrate Judge concluded that the Alien Tort Statute (ATS) could not confer subject matter jurisdiction upon Plaintiff's claims because all of the violations alleged in the complaint occurred outside of the United States and *Kiobel*'s "presumption against extraterritorial application" could not be rebutted here. Dkt. 5 at 4.

While subject matter jurisdiction may well be lacking in this case, relying on *Kiobel* was error, because the issue of the application of the ATS to claims arising abroad is a merits question and not a jurisdictional inquiry. Accordingly, the Magistrate Judge lacked the power to reach the *Kiobel* question unless she first satisfied herself that subject matter jurisdiction was present. *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 93-102 (1998) (holding that determinations of cause of action may not be decided prior to a determination of subject matter jurisdiction).

4

Jurisdiction under the ATS is present only when the plaintiff alleges a violation of a norm of the law of nations with "definite content and acceptance among civilized nations." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 732 (2004). Although *amicus* takes no position on the facts alleged by Plaintiff, if the Magistrate Judge's characterization of the complaint is correct, then it does not meet the elements of any actionable ATS claim recognized by any court, and subject matter jurisdiction is most likely lacking.

*Amicus* takes no position on whether Plaintiff has suffered injuries that would permit him to allege a *Sosa*-qualifying violation of the law of nations. This Court is obligated to construe Plaintiff's *pro se* complaint liberally, but assuming that the Magistrate Judge did so, the claim as described in the R&R—the actions of an apparently private charity in failing to "provide an interview or hearing on his application, notice of the final decision, or a process to appeal the final decision" denying humanitarian relief, Dkt. 5 at 2—does not appear to resemble any actionable tort that has been recognized in any prior ATS case. If, upon review of the complaint within the liberal pleading standards afforded to *pro se* plaintiffs, the Court finds any doubt as to whether an actionable tort sufficient to support ATS jurisdiction has been alleged, the Court could request further information from Plaintiff, but cannot reach merits issues in the absence of jurisdiction.

Only after this jurisdictional analysis takes place would it be proper for the court to reach the merits question of whether the ATS reaches any particular extraterritorial conduct. In *Kiobel,* the Court cited *Morrison* with approval for the proposition that "the question of extraterritorial application was a 'merits question,' not a question of jurisdiction." *Kiobel.* 133 S. Ct. 1659, 1664 (citing *Morrison* v. *Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869, 2876-77 (2010)). As the majority explained, "[t]he principles underlying

5

the presumption against extraterritoriality thus constrain courts exercising their power under the ATS," specifically, the power to recognize a federal common law cause of action for violations of the law nations. The merits question of whether or not the ATS should apply to particular claims arising abroad necessitates a case-by-case factual analysis, just as the Court conducted in *Kiobel*.

Regardless of whether the instant case falls squarely within *Kiobel*, at least three propositions are clear. First, the Supreme Court's holding in *Kiobel* applied no categorical bar against hearing ATS claims arising outside of the United States. Rather than impose a bright-line rule against recognition of ATS claims that arise abroad, the Court held that ATS claims raised in a particular case can rebut the presumption if the claims "touch and concern the territory of the United States . . . with sufficient force." *Id.* at 1669.

Second, because the *Kiobel* holding was restricted to the facts, it is quite narrow. *Kiobel* was notable for the absence of connections to the United States. All three concurrences—for seven justices—confirm that the holding is limited. Justice Kennedy noted that the Court was "careful to leave open a number of significant questions" and made clear that "[o]ther [ATS] cases may arise" that are not foreclosed "by the reasoning and holding of today's case; and in those disputes the proper implementation of the presumption against extraterritorial application may require some further elaboration and explanation." *Id.* at 1669 (Kennedy J., concurring). Justice Breyer observed that the majority "leaves for another day the determination of just when the presumption against extraterritoriality may be 'overcome.'" *Id.* at 1672 (Breyer J., concurring) (quoting *id.* at 1669). And Justice Alito confirmed that the decision "leaves much unanswered." *Id.* at

6

1669 (Alito J., concurring).

Third, the Court did *not* require conduct in the United States. Only Justices Alito and Thomas would have preferred a "broader standard" than the majority's "narrow approach"; they would have required conduct in the United States that itself amounts to a violation of international law. *Id.*

*Amicus* has substantial organizational interests and expertise in precisely these issues, and thus is particularly concerned with the Magistrate Judge's misinterpretation of *Kiobel*. **EarthRights International** is a non-profit human rights organization, based in Washington, D.C., that litigates and advocates on behalf of victims of human rights abuses worldwide, often through recourse to the Alien Tort Statute. ERI's organizational mission includes ensuring accountability and effective remedies for victims of human rights and environmental abuses worldwide.

Moreover, ERI is counsel in one pending ATS case, *John Doe I v. Chiquita Brands Int'l, Inc.*, No. 08-80421-cv-MARRA/JOHNSON (S.D. Fla.), No. 12-14898 (11th Cir.), and has been counsel in several other ATS and Torture Victim Protection Act (TVPA) cases that are now concluded, including *Doe v. Unocal Corp.*, No. 00-56603 (9th Cir.), *Bowoto v. ChevronTexaco Corp.*, No. 99-CV-2506 (N.D. Cal.), and *Wiwa v. Royal Dutch Petroleum Corp.*, No. 96 Civ. 8386 (S.D.N.Y.). All these cases involve human rights abuses that took place in foreign countries. *Amicus* also routinely submits *amicus* briefs to appellate courts on the applicability of the ATS, including two *amicus* briefs to the Supreme Court in *Kiobel*.

*Amicus* therefore has an interest in the proper interpretation of the reasoning and holding of the Supreme Court's decision in *Kiobel*, as well as an interest in the general

question of the availability of the ATS as a remedy for human rights violations that took place on foreign soil.

## II. Argument

The Court should grant *amicus*'s motion because *amicus*'s brief offers arguments and evidence on the interpretation of the ATS and *Kiobel* that are not available from the parties, and because *amicus*'s interest in ensuring remedies for human rights abuses committed outside of the United States (in whole or in part) is likely to be affected by the outcome of this case.

District courts within this Circuit have the discretion to accept *amicus* briefs. As the 11th Circuit has found, while the Federal Rules of Civil Procedure "do not specifically provide for the filing of *amicus curiae* briefs at the district court level… district courts possess the inherent authority to appoint 'friends of the court' to assist in their proceedings." *Bayshore Ford Trucks Sales, Inc. v. Ford Motor Co. (In re Ford Motor Co.)*, 471 F.3d 1233, 1249 n.34 (11th Cir. 2006). District courts have thus accepted *amicus curiae* submissions from those participating "only for the benefit of the court." *Resort Timeshare Resales, Inc. v. Stuart*, 764 F. Supp. 1495, 1501 (S.D. Fla. 1991).

Guiding this discretion in particular is a concern for the court's understanding of a particular legal issue, as well as a concern for the interests of those not represented in the

8

litigation. Indeed, "[c]ourts have recognized that permitting friends of the court may be advisable where the third parties can contribute to the court's understanding of the matter in question." *Conservancy of Sw. Fla. v. United States Fish & Wildlife Serv.*, 2010 U.S. Dist. LEXIS 94003 at \*3 (M.D. Fla. Sept. 9, 2010). Particularly relevant for courts considering whether to accept *amicus curiae* submissions is whether "the *amicus* has a special interest," or whether "existing counsel need assistance." *News & Sun-Sentinel Co. v. Cox*, 700 F. Supp. 30, 32 (S.D. Fla. 1988). Additional factors to consider include whether "the petitioner's interest is not represented competently or at all in the case," whether "the proffered information is timely and useful," and whether "the petitioner is not partial to a particular outcome in the case." *Conservancy of Sw. Fla.* 2010 U.S. Dist. LEXIS 94003 at \*4 (internal citations omitted).

*Amicus* has a special interest in the jurisprudence produced through this litigation in light of the fact that it is currently litigating, within this Circuit, an ATS case involving events occurring in part outside of the United States and has litigated several such cases in the recent past, and may litigate more such cases in the near future. Moreover, the outcome of this case directly affects *amicus*'s institutional mission of ensuring accountability and effective remedies for those who suffer egregious human rights violations worldwide, including torture, especially to the extent that it influences the outcome of other ATS cases and the interpretation of *Kiobel* in other courts.

9

Additionally, given that Plaintiff is proceeding *pro se*, there is reason to believe

that the Court could benefit from the additional guidance as to the content of a

complicated and under-developed area of the law, provided by legal counsel with

particular experience and interest in the subject matter and not partial to any particular

outcome in this case. *Amicus* has significant expertise in questions of international law

and the application of the ATS to abuses related to corporate activities abroad.  The brief

addresses issues and makes points not covered by Plaintiff or Defendant's counsel.

## CONCLUSION

For the foregoing reasons, *amicus curiae* EarthRights International respectfully

requests leave to file a brief in support of neither party, to be filed on May 30, 2013.

Dated: May 30, 2013

James K. Green, FL Bar No. 229466
James K. Green, P.A.
Esperanté, Suite 1650
222 Lakeview Ave.
West Palm Beach, FL 33401
Tel: 561-659-2029
Fax: 561-655-1357

Marco Simons
Benjamin Hoffman
Marissa Vahlsing
EarthRights International
1612 K St., NW, Suite 401
Washington, DC 20006
Tel.: (202) 466-5188
Fax: (202) 466-5189
marco@earthrights.org
*Counsel for Amicus Curiae*

10

## CORPORATE DISCLOSURE STATEMENT PURSUANT TO FEDERAL RULE OF APPELLATE PROCEDURE 26.1

Pursuant to Federal Rule of Appellate Procedure 26.1, counsels for proposed

*amicus curiae* make the following disclosure: *amicus curiae* is a nongovernmental

corporation.  There is no corporation that is a parent corporation of any *amicus* or that

owns 10% or more of any *amicus's* stock.

## CERTIFICATE OF SERVICE

I, Marco Simons, the undersigned, hereby certify that I am employed by EarthRights International, 1612 K St., NW, Suite 401, Washington, DC 20006; I am over the age of eighteen and am not a party to this action. I further declare under penalty of perjury that on May 30, 2013, I served the foregoing **Motion for Leave of *Amicus Curiae* EarthRights International to File a Brief of Amicus in Support of Neither Party** by sending electronic copies to the following recipients by electronic mail:

Oluwashina K. Ahmed-Al-Khalifa
5 Robert Onadipe Str. Gbadaga Phase 1
Shomolu, Pedro, Lagos, Nigeria
Tel: 00234-810-380-4404
Email: oahmed005@yahoo.com

*Pro Se Plaintiff*

The Salvation Army, Nigeria Territory (Social Services Section)
6 Shipeolu Street
Onipanu, Shomolu
Lagos,
Nigeria

*Defendant*
(No attorney information provided)

Dated: May 30, 2013                              /s/ Marco Simons
                                                 Marco Simons
                                                 EARTHRIGHTS INTERNATIONAL

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
Pensacola Division

OLUWASHINA KAZEEM AHMED-AL-KHALIFA,
a/k/a OLUWASHINA AHMED,
a/k/a MARK AYILLA,
     Plaintiff,

vs.                          Case No.: 3:13cv289/WS/EMT

THE SALVATION ARMY, NIGERIA
TERRITORY SOCIAL SERVICES SECTION,
     Defendant.

_____/

**EARTHRIGHTS INTERNATIONAL'S MEMORANDUM OF LAW OF *AMICUS
CURIAE* IN SUPPORT OF NEITHER PARTY**

Filed
Rec'd0531'13UsDcFln3AM0838
£8

## CITATION OF AUTHORITIES

### FEDERAL CASES

*Ahmed-al-Khalifa v. Abba Moro*,
  No. 13 C 1381, 2013 U.S. Dist. LEXIS 72697 (N.D. Ill. Mar. 6, 2013) .......................... 7

*Ahmed-al-Khalifa v. ECOWAS Court of Justice*,
  No. 13 C 1380, 2013 U.S. Dist. LEXIS 72305 (N.D. Ill. Feb. 27, 2013) ......................... 6

*Ahmed-al-Khalifa v. Jordan*,
  No. 13 CV 276, 2013 U.S. Dist. LEXIS 72317 (D. Conn. Mar. 13, 2013) .................... 7

*Ahmed-al-Khalifa v. Kingdom of Spain*,
  No. 13 CV 271, 2013 U.S. Dist. LEXIS 72318 (D. Conn. Mar. 13, 2013) .................... 7

*Ahmed-al-Khalifa v. Minister of Justice, Equality, and Law Reform [of Ireland]*,
  No. 13 CV 272, 2013 U.S. Dist. LEXIS 72319 (D. Conn. Mar. 13, 2013) .................... 7

*Ahmed-al-Khalifa v. Sunnyade*,
  No. 12 C 10288, 2013 U.S. Dist. LEXIS 19035 (N.D. Ill. Feb. 12, 2013) ............... 6, 6-7

*Burks v. Lasker*,
  441 U.S. 471 (1979)........................................................................................................ 3

*Estate of Amergi v. Palestinian Auth.*,
  611 F.3d 1350 (11th Cir. 2010) .................................................................................... 5

*Kiobel v. Royal Dutch Petroleum Co.*,
  133 S. Ct. 1659 (2013)........................................................................................... passim

*Morrison v. Nat'l Australia Bank Ltd.*,
  130 S. Ct. 2869 (2010)................................................................................................... 3

*Sosa v. Alvarez-Machain*,
  542 U.S. 692 (2004)............................................................................................... passim

*Steel Co. v. Citizens for Better Environment*, 523 U.S. 83 (1998)............................................. 2, 5

*Amicus curiae* EarthRights International (ERI) [1] respectfully addresses the interpretation of the Supreme Court's recent decision in *Kiobel v. Royal Dutch Petroleum Co.,* 133 S. Ct. 1659 (2013), with respect to this case. Specifically, *amicus* demonstrates that the April 29, 2013 Report and Recommendation (R&R) erred in concluding that the application of *Kiobel* is a jurisdictional question, and therefore erred in reaching that question without first establishing that the court had subject matter jurisdiction over this action.

The Magistrate Judge applied *Kiobel* to Plaintiff's claims and recommended that Plaintiff's complaint be dismissed with prejudice for lack of subject matter jurisdiction. The Magistrate Judge concluded that the Alien Tort Statute (ATS) could not confer subject matter jurisdiction upon Plaintiff's claims because all of the violations alleged in the complaint occurred outside of the United States and *Kiobel*'s "presumption against extraterritorial application" could not be rebutted here. Dkt. 5 at 4.

While subject matter jurisdiction may well be lacking in this case, relying on *Kiobel* was error, because the issue of the application of the ATS to claims arising abroad is a merits question and not a jurisdictional inquiry. Accordingly, the Magistrate Judge lacked the power to reach the *Kiobel* question unless she first satisfied herself that subject matter jurisdiction was present. *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83,

---

[1] No counsel for a party authored this brief in whole or part and no persons other than *amicus* or its counsel made a monetary contribution to this brief's preparation or submission.

3

93-102 (1998) (holding that determinations of cause of action may not be decided prior to a determination of subject matter jurisdiction).

Jurisdiction under the ATS is present only when the plaintiff alleges a violation of a norm of the law of nations with "definite content and acceptance among civilized nations." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 732 (2004). Although *amicus* takes no position on the facts alleged by Plaintiff, if the Magistrate Judge's characterization of the complaint is correct, then it does not meet the elements of any actionable ATS claim recognized by any court, and subject matter jurisdiction is most likely lacking.

## I. In an ATS case, a court must first find that the violations alleged are actionable under *Sosa*, and therefore that ATS jurisdiction is present, before reaching the merits question of the *Kiobel* presumption.

In *Kiobel*, the Court was clear that whether the ATS reaches any particular extraterritorial conduct is not a jurisdictional issue. The R&R thus puts the cart before the horse in conducting the *Kiobel* analysis before addressing whether Plaintiff has alleged a tort that provides ATS jurisdiction.

### A. The *Kiobel* presumption is not jurisdictional; it is a fact-bound merits question to be decided on a claim-by-claim basis.

The Supreme Court has generally treated the application of presumptions against extraterritoriality as a merits question regarding the existence of a cause of action and not as a jurisdictional issue. *See, e.g.*, *Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869, 2877 (2010) ("[T]o ask what conduct § 10(b) reaches is to ask what conduct § 10(b) prohibits, which is a merits question."); *c.f. Burks v. Lasker*, 441 U.S. 471, 476

4

(1979) ("[W]hether a cause of action exists is not a question of jurisdiction.").

The Court in *Kiobel*, 133 S. Ct. at 1664, cited *Morrison* with approval for the proposition that "the question of extraterritorial application was a 'merits question,' not a question of jurisdiction." Although the ATS is "strictly jurisdictional"—meaning that it "does not directly regulate conduct or afford relief"—because it uniquely "allows federal courts to recognize certain causes of action," the Court determined that "the principles underlying the canon of interpretation *similarly* constrain courts *considering causes of action* that may be brought under the ATS." *Id.* (emphasis added). In other words, the fact that the ATS is a jurisdictional statute does not mean that the application of the presumption against extraterritoriality in the ATS context is a jurisdictional inquiry—rather, the presumption applies to the merits question of whether a federal common law cause of action exists under the ATS. Thus, the principles underlying the presumption against extraterritoriality "constrain courts *exercising their power* under the ATS," *id.* at 1665 (emphasis added), namely, the power to recognize a cause of action for violations of the law of nations. In short, *Kiobel* applied its presumption to the scope of federal common law *claims* asserted under the ATS, not to the scope of ATS jurisdiction.

While the Supreme Court in *Kiobel* did not go through a detailed subject matter jurisdiction analysis, the norms alleged to have been violated in that case—extrajudicial killings, crimes against humanity, torture—have long been understood to fall squarely within the *Sosa* standard. *E.g. Sosa*, 542 U.S. at 732. Thus, the Court determined that the

5

"question here is not whether petitioners have stated a proper claim under the ATS,"
suggesting that subject matter jurisdiction was proper. Instead, the Court turned to the
merits question of "whether a claim may reach conduct occurring in the territory of a
foreign sovereign." *Kiobel* 133 S. Ct. at 1664.

### B. The Magistrate Judge should not have reached the question of whether *Kiobel* applies unless Plaintiff has pled a claim for an actionable violation of international law, which is not apparent here.

Because the *Kiobel* inquiry is not jurisdictional, the Magistrate Judge should not
have considered *Kiobel* without first determining that there is subject matter jurisdiction.
And that inquiry requires a determination that Plaintiff has sufficiently alleged a violation
of customary international law that meets *Sosa*'s standard. *See Sosa*, 542 U.S. 692. In
*Estate of Amergi v. Palestinian Auth.*, 611 F.3d 1350 (11th Cir. 2010), the Eleventh
Circuit confirmed that dismissal for lack of subject matter jurisdiction is proper where the
abuses alleged do not attain "the status of a violation of the law of nations." *Id.* at 1365.

According to the R&R, Plaintiff has alleged that "[t]he Salvation Army Nigeria
Territory denied his application for humanitarian relief without a fair hearing and
appeal." Dkt 5 at 1. In light of these claims, the Magistrate Judge properly stated that "the
ATS is jurisdictional in nature and provides a cause of action for a modest number of
international law violations under federal common law." Dkt. 5 at 3 (quoting *Kiobel v.
Royal Dutch Petroleum Co.*, at 1663) (quoting *Sosa* 542 U.S. at 724) (internal quotations
omitted). Although the court posed the question of whether Plaintiff alleged a violation

6

sufficient to satisfy *Sosa*'s subject matter jurisdiction standard for the ATS, it never answered it. Having failed to do so, the court never established that it had the power to reach the merits question posed by *Kiobel*. *See Steel Co.*, 523 U.S. at 93-102.

*Amicus* takes no position on whether Plaintiff has suffered injuries that would permit him to allege a Sosa-qualifying violation of the law of nations. This Court is obligated to construe Plaintiff's *pro se* complaint liberally, but assuming that the Magistrate Judge did so, the claim as described in the R&R—the actions of an apparently private charity in failing to "provide an interview or hearing on his application, notice of the final decision, or a process to appeal the final decision" denying humanitarian relief, Dkt. 5 at 2—does not appear to resemble any actionable tort that has been recognized in any prior ATS case. If, upon review of the complaint within the liberal pleading standards afforded to *pro se* plaintiffs, the Court finds any doubt as to whether an actionable tort sufficient to support ATS jurisdiction has been alleged, the Court could request further information from Plaintiff, but cannot reach merits issues in the absence of jurisdiction.

Mr. Ahmed-al-Khalifa has filed at least nineteen cases asserting jurisdiction under the ATS; thus far every one that has been considered by a court appears to have been dismissed or recommended to be dismissed. In two cases, the Northern District of Illinois dismissed lawsuits for lack of subject matter jurisdiction, finding in one that allegations that an African regional court had failed to act on his application for relief did not amount to "a violation of the law of nations contemplated by the ATS," *Ahmed-al-Khalifa v.*

7

*ECOWAS Court of Justice*, No. 13 C 1380, 2013 U.S. Dist. LEXIS 72305, \*6 (N.D. Ill.

Feb. 27, 2013), and in the other that "a contract dispute" similarly provided no basis for

ATS jurisdiction. *Ahmed-al-Khalifa v. Sunnyade*, No. 12 C 10288, 2013 U.S. Dist.

LEXIS 19035, \*5 (N.D. Ill. Feb. 12, 2013).[2] Four other cases of his have been dismissed

(or recommended to be dismissed) as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B),

without reaching any *Kiobel* analysis.[3]

---

[2] The district court subsequently denied the plaintiff's motion for reconsideration in *Sunnyade*, stating: "In addition, given Al-Khalifa's penchant for filing frivolous lawsuits whose primary purpose is to assert dubious claims, raise meritless legal points, or take other action to undo his decade-old deportation from the United States, the Court refers this matter to the Executive Committee for further determination of whether Al-Khalifa should be enjoined from filing further actions absent leave of the Committee." *Sunnyade*, 12 C 10288, 2013 U.S. Dist. LEXIS 65972 at \*3.

[3] *See, e.g., Ahmed-al-Khalifa v. Minister of Justice, Equality, and Law Reform [of Ireland]*, No. 13 CV 272, 2013 U.S. Dist. LEXIS 72319 (D. Conn. Mar. 13, 2013); *Ahmed-al-Khalifa v. Kingdom of Spain*, No. 13 CV 271, 2013 U.S. Dist. LEXIS 72318 (D. Conn. Mar. 13, 2013); *Ahmed-al-Khalifa v. Jordan*, No. 13 CV 276, 2013 U.S. Dist. LEXIS 72317 (D. Conn. Mar. 13, 2013); and *Ahmed-al-Khalifa v. Abba Moro*, No. 13 C 1381, 2013 U.S. Dist. LEXIS 72697 (N.D. Ill. Mar. 6, 2013). These four cases alone cover: 1) the Minister for Justice, Equality and Law Reform in Ireland, the Governor of Cloverhill Prison in Ireland, the Governor of Wheatfield Prison in Ireland, Ryain Airline in Ireland, the Nigeria High Commission in Ireland, the Secretary of State for the Home Department in the United Kingdom, the Newport Central Police Department in the United Kingdom, Campsfield House Immigration Removal Center in the United Kingdom, British Midland Inter-national Airline in the United Kingdom, Dutch Immigration and Naturalization Services in the Netherlands, Detentie Centrum Schipol Post in the Netherlands, the Director General of Immigration in Spain, and the Nigeria Immigration Service in Nigeria; 2) the Kingdom of Spain; 3) Jordan, United Arab Emirates, Bahrain, Tunisia, Algeria, Djibouti, Kingdom of Saudi Arabia, Sudan, Syrian Arab Republic, Somalia, Iraq, Oman, Palestine, Qatar, Comoros, Kuwait, Lebanon, Libyan Arab Jamahiriya, Egypt, Morocco, Mauritania, Yemen, United Kingdom of Great Britain and Northern Ireland, the Isle of Man, Scotland, the Republic of Ireland, Belgium, Portugal, France, Italy, Denmark, Norway, Iceland, Sweden, the Kingdom of Spain, the

8

Jurisdiction is by no means as apparent in this case as it was in *Kiobel*. The Court must address the threshold jurisdictional issue of whether Plaintiff's claims meet the *Sosa* standard before turning to the merits analysis of the *Kiobel* presumption against extraterritoriality.

### C. *Kiobel* placed no categorical bar requiring conduct in the United States.

Because the R&R did prematurely reach the question of the application of *Kiobel* to Plaintiff's claims, *amicus* takes this opportunity to clarify the proper analysis for the application of the *Kiobel* presumption in the event that this court finds that subject matter jurisdiction is proper.

As an initial matter, the Supreme Court's holding in *Kiobel* was extremely narrow; it applied no categorical bar against hearing ATS claims arising outside of the United States. The Supreme Court held that "the *principles underlying*" the presumption against extraterritoriality "constrain courts considering [ATS] causes of action." 133 S. Ct. at 1664. The Court found only that the "mere corporate presence" of a foreign corporation does not suffice to "displace" the presumption. *Id.* at 1669. However, where cases involve extraterritorial conduct but the claims "touch and concern" the United States "with sufficient force," the presumption *is* "displace[d]." *Id.* The decision did not indicate how this standard applies to facts differing from "mere corporate presence." The application of *Kiobel* is simple only if the instant case is parallel to *Kiobel* in that the *only*

---

Netherlands, Germany, Greece, Macedonia, Brazil, Canada, and the United States; and 4) the Nigerian Interior Minister.

9

connection of the claims to the United States is the mere presence of a foreign entity (if that).

Regardless of whether the instant case falls squarely within *Kiobel*, at least three propositions are clear. First, the "touch and concern" standard refutes any suggestion that the Court categorically barred ATS claims arising abroad. Indeed, the Court ruled "[o]n these facts," *id.*, making clear that this standard must be applied on a fact-specific basis.

Second, because the holding was restricted to the facts, it is quite narrow. *Kiobel* was notable for the absence of connections to the United States. There, Nigerians sued UK and Dutch parent companies alleged to have abetted Nigerian military abuses in Nigeria. *Id.* at 1660-62. Defendants' only U.S. connection was that they were listed on the New York Stock Exchange and maintained an investor servicing office owned by a separate corporate affiliate. *Id.* at 1667 (Breyer J., concurring).

All three concurrences—for seven justices—confirm that the holding is limited. Justice Kennedy noted that the Court was "careful to leave open a number of significant questions" and made clear that "[o]ther [ATS] cases may arise" that are not foreclosed "by the reasoning and holding of today's case; and in those disputes the proper implementation of the presumption against extraterritorial application may require some further elaboration and explanation." *Id.* at 1669 (Kennedy J., concurring). Justice Breyer observed that the majority "leaves for another day the determination of just when the presumption against extraterritoriality may be 'overcome.'" *Id.* at 1672 (Breyer J.,

10

concurring) (quoting *id*. at 1669). And Justice Alito confirmed that the decision "leaves much unanswered." *Id*. at 1669 (Alito J., concurring).

Third, the Court did *not* require conduct in the United States. Only Justices Alito and Thomas would have preferred a "broader standard" than the majority's "narrow approach"; they would have required conduct in the United States that itself amounts to a violation of international law. *Id*.

Rather than impose a bright-line rule against the recognition of ATS claims that arise abroad, the Court held that ATS claims raised in a particular case can rebut the presumption if the claims "touch and concern the territory of the United States . . . with sufficient force." *Id*. at 1669. As, Justice Breyer observed, the majority "leaves for another day the determination of just when the presumption against extraterritoriality may be 'overcome'" *Id*. at 1672 (Breyer J., concurring) (quoting *id*. at 1669).

Whether the facts of the case sufficiently "touch and concern" the United States in order to "displace" the presumption is not amenable to a bright line rule; it necessarily mandates a case-by-case analysis. Thus, the Supreme Court adopted the argument of the United States before the Court in the *Kiobel* case. There, the United States Government stated:

> There is no need in this case to resolve across the board the circumstances under which a federal common-law cause of action might be created by a court exercising jurisdiction under the ATS for conduct occurring in a foreign country. In particular, the Court should not articulate a categorical rule foreclosing any such application of the ATS. . . . claims based on conduct in a foreign country should be considered in light of the

11

circumstances in which they arise.

Supplemental Brief For The United States As Amicus Curiae In Partial Support Of

Affirmance, at 4-5, *Kiobel v. Royal Dutch Petroleum Co.*, No. 10-1491 (filed June 2012)

(emphasis added). The Court adopted this position when it stated that it based its ruling

"[o]n these facts." *Kiobel* at 1669.

## II. Conclusion

For the foregoing reasons, *amicus* respectfully requests that this Court refrain

from adopting the Magistrate Judge's application of the *Kiobel* presumption because the

Magistrate Judge did not have the power to reach that question without first finding there

was subject matter jurisdiction under the *Sosa* standard.

Respectfully Submitted,

James K. Green, FL Bar No. 229466
James K. Green, P.A.
Esperanté, Suite 1650
222 Lakeview Ave.
West Palm Beach, FL 33401
Tel: 561-659-2029
Fax: 561-655-1357

Marco Simons
Marissa Vahlsing
Benjamin Hoffman
EarthRights International
1612 K Street NW #401
Washington, DC 20006
Tel: 202-466-5188

12

Fax: 202-466-5189
*Counsel for amicus curiae*

## CERTIFICATE OF SERVICE

I, Marco Simons, the undersigned, hereby certify that I am employed by EarthRights International, 1612 K St., NW, Suite 401, Washington, DC 20006; I am over the age of eighteen and am not a party to this action. I further declare under penalty of perjury that on May 30, 2013, I served the foregoing **Earthrights International's Memorandum of Lawof Amicus Curiae in Support of Neither Party** by sending electronic copies to the following recipients by electronic mail:

Oluwashina K. Ahmed-Al-Khalifa
5 Robert Onadipe Str. Gbadaga Phase 1
Shomolu, Pedro, Lagos, Nigeria
Tel: 00234-810-380-4404
Email: oahmed005@yahoo.com

*Pro Se Plaintiff*

The Salvation Army, Nigeria Territory (Social Services Section)
6 Shipeolu Street
Onipanu, Shomolu
Lagos,
Nigeria

*Defendant*
(No attorney information provided)

Dated: May 30, 2013                    /s/ Marco Simons
                                       Marco Simons
                                       EARTHRIGHTS INTERNATIONAL